IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PATT KOLESAR and
RAY KOLESAR,

                                                                            OPINION and ORDER

        Plaintiffs,

                                                                            09-cv-326-bbc

DOUGLAS HUFFMAN,

        Involuntary Plaintiff,

   v.

MICHELE MOLNAR and
JAMIE DANBURG

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        In this lawsuit, plaintiffs Patt and Ray Kolesar assert claims for breach of contract and promissory estoppel for defendants Michele Molnar's and Jamie Danburg's failure to provide financing for plaintiffs' show dog. After plaintiffs filed suit in the Circuit Court for Wood County, Wisconsin, defendants removed the case to this court. Now before the court are plaintiffs' motion to remand the action to state court and defendants' motion to dismiss the case for lack of personal jurisdiction. Although plaintiffs contend that personal jurisdiction

1

exists and remand is proper because defendants agreed to resolve any dispute in Wood County, Wisconsin, I find that defendants never agreed to that provision. Moreover, plaintiffs have failed to establish statutory grounds for exercising personal jurisdiction over defendants, so I will grant defendants' motion to dismiss the case for lack of personal jurisdiction and deny as moot plaintiffs' motion to remand the case to state court.

From the parties' submissions, I find the following facts to be material and undisputed for the purpose of deciding the present motions.

## UNDISPUTED FACTS

### A. Parties

At all times relevant to this case, plaintiffs Patt and Ray Kolesar have lived in Wisconsin, involuntary plaintiff Douglas Huffman has lived in Missouri and defendants Michele Molnar and Jamie Danburg have lived in Florida. At the center of the parties' dispute is a show dog named "Champion Tupelo Shoboat Tu China Tu," also known as "Boo." Boo has resided with Huffman in Missouri for training purposes and while being shown, but at times he has resided in Wisconsin with the Kolesars, including several days in April and August 2008 and February, March, June and July 2009.

2

B. <u>Show Dog Agreement</u>

On June 27, 2007, defendant Michele Molnar sent emails to more than 50 breeders across the United States regarding her interest in "campaigning" a show dog. One of those emails was directed at plaintiff Patt Kolesar. It stated as follows:

> I am contacting you, as a respected pug breeder, to help in my search for a pug to campaign to the top. I would like to get started in pugs, I adore their personalities and overall look. I have already established a Handler, Kathy Caton in the Midwest to campaign a top pug for me. We are currently looking for a potential dog to do this with. If you feel you may have anything or you may know of a dog that would work for me, please let me know.

Plaintiff Patt Kolesar did not respond to the email.

In November or December 2007, defendants started negotiating co-ownership of Boo with Huffman. These negotiations occurred as follows. Huffman contacted defendants by email and telephone from his home in Missouri and asked whether defendants would be interested in becoming co-owners of Boo. After a number of conversations among Huffman and defendants and their consultant Miguel Betancourt, Huffman stated that he and the Kolesars would make defendants co-owners of Boo if defendants would pay the expenses of showing and promoting Boo at dog shows. In addition, Huffman stated that he would house, show and handle Boo in a manner designed to maximize points while minimizing expenses and estimated that costs for showing and promoting Boo would be approximately $60,000 over the next year and decrease thereafter. Finally, Huffman stated that breeding

decisions about Boo would be made jointly, stud fees generated during the campaign would be paid to defendants, and upon Boo's retirement, stud fees would be shared equally. Defendants agreed to these terms. At that time, defendants had never spoken with the Kolesars.

In December 2007, the official ownership papers of Boo were changed to reflect that defendants, the Kolesars and Huffman were co-owners of Boo. After the ownership papers were changed, defendants discussed additional terms with Huffman. Defendants agreed to pay Huffman a monthly handling fee plus travel and lodging expenses.

At some point in December, plaintiff Patt Kolesar mailed a proposed written co–ownership agreement. The proposed contract included terms that had not been discussed with defendants, including a forum selection clause and a provision requiring defendants to pay for Huffman's meals. Moreover, although defendants believed that Boo's expenses would require their pre-approval, the document did not include a provision to that effect.

Defendant Molnar asked Betancourt to tell Huffman and the Kolesars that the document "was not correct" and required changes. In addition, defendant Molnar expressed her concerns about the document to Huffman, who stated that the document was merely a draft. On or about the first week of January 2008, plaintiff Patt Kolesar told Betancourt that if defendants did not agree to the terms of the contract or forward proposed changes, they would be removed from the ownership listings. Plaintiff Patt Kolesar then met with

Betancourt and discussed changes that defendants were proposing. (Which changes were discussed is unclear.)

On January 7, 2008, plaintiff Patt Kolesar sent a revised proposed contract incorporating certain changes that defendants had requested together with registration transfer forms for the American Kennel Club. (Defendants allege that they never received a document incorporating the points they had raised.) The revised document, entitled "Sales Contract and Sponsorship Agreement," provided that in exchange for a one-third interest, "[defendants] agree to pay the sum of $1.00 to [plaintiffs] upon execution of this contract and to pay show expenses of the dog during his confirmation show career. . . . Upon execution of this contract by all the parties, the [American Kennel Club] registration paperwork shall be filed naming all parties as owners of the dog." Moreover, the document included a choice-of-law and venue selection clause: "Any disputes arising out of this contract shall be covered by the laws of the State of Wisconsin and venue for resolution of any dispute shall be in the County of Wood, State of Wisconsin." Finally, the document provided that "any amendments to this contract shall be in writing and signed by all parties."

On January 14, 2008, defendants filed the American Kennel Club registration documents after adding their names to the documents. In early February 2008, plaintiff Patt Kolesar received notice of the amended registration certificate. The registration listed defendants as owners of record and listed the dog's residence as being in Wisconsin. After

5

receiving notice of the registration, plaintiff Patt Kolesar contacted defendant Molnar and asked her to send a signed copy of the revised contract.  (The parties dispute whether defendant Molnar told defendant Patt Kolesar that she had signed the contract and would take a copy to New York for an upcoming dog show.)

On February 10, 2008, defendant Molnar presented plaintiff Patt Kolesar with a "ceremonial" one dollar bill at a party in New York to celebrate the parties' co-ownership of Boo.  (The parties dispute whether defendant Molnar told plaintiff Patt Kolesar that she had forgotten to bring the signed contract, but would send a copy to Florida.)  Defendants began paying for training, traveling and showing Boo and started paying Huffman a monthly handling fee.  No written document was ever signed.

OPINION

Once a defendant has moved to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to show that the defendant may be sued in the forum state.  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 n.11 (7th Cir. 2003).  Where a defendant does not consent to jurisdiction, the plaintiff must show that jurisdiction is consistent with the requirements of both this state's long-arm statute, Wis. Stat. § 801.05, and due process.  Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998).

Plaintiffs' first argument is that defendants consented to personal jurisdiction in the state of Wisconsin by agreeing to a clause that provided that any disputes would be resolved in the County of Wood, State of Wisconsin. There is no question that such a forum selection clause would amount to consent to suit in this state. What is at issue is whether the document containing the forum selection clause represents the parties' agreement. As to that issue, there is only one question: did defendants accept the terms of the written document plaintiffs mailed them in which the forum selection clause appears?

Defendants never signed that document, but as plaintiffs point out, a signature is not required to show acceptance of the terms of a contract. Chudnow Construction Corp. v. Commercial Discount Corp., 48 Wis. 2d 653, 656, 180 N.W.2d 697, 657 (1970) (citation omitted). Defendants added their names to the American Kennel Club registration for Boo, paid Boo's expenses and involuntary plaintiff's salary and paid one dollar consideration. Thus, according to plaintiffs, defendants showed their acceptance of the terms of the document containing a forum selection clause by acting in conformity with its other provisions.

This position is problematic. First, defendants' behavior is consistent with their agreeing only to the terms of the parties' oral agreement, under which defendants would pay Boo's expenses in exchange for ownership. The oral agreement did not specify that defendants would register with the American Kennel Club or that $1.00 consideration would

7

be paid, nor did it prohibit such actions. Moreover, there is no question that defendants did object to certain terms included in the document. The fact that defendants registered with the American Kennel Club and paid $1.00 consideration is consistent with their ongoing rejection of the specific terms included in the document and their acceptance of only the general terms of the agreement with an understanding that the details of the agreement would be ironed out later.

Second, and more important, although signatures are not generally required, the document *required* signatures. The document provided that defendants would pay the $1.00 and send out registration paperwork "upon execution of this contract by all parties." In its context, the term "execution" means "signature." By refusing to sign the document, and instead paying the $1.00 and sending out the registration paperwork, defendants implicitly rejected the terms of the document. For this reason, the forum selection clause cannot constitute consent to personal jurisdiction. Plaintiffs may think this unfair, particularly because they believe that defendants were leading them on, promising to sign the contract later, stating that the contract had been signed and then "forgetting" the contract. However, none of these statements gave plaintiffs the certainty of a signed document.

Consent is not plaintiffs' only argument. They also identify two statutory grounds for exercising personal jurisdiction over defendants: Wis. Stat. §§ 801.05(1)(d) and 801.05(5)(d). In neither case do plaintiffs establish the statutory requirements. First,

8

plaintiffs point to § 801.05(1)(d), which authorizes exercising personal jurisdiction over a defendant "engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Under this subsection, a defendant may be subject to personal jurisdiction if he "solicits, creates, nurtures, or maintains, whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." Druschel v. Cloeren, 295 Wis. 2d 858, 865, 723 N.W.2d 430, 434 (Ct. App. 2006) (internal quotations omitted).

It appears that defendants had a "continuing business relationship" with plaintiffs, who live in Wisconsin. The question is, did defendants solicit, create, nurture or maintain that business relationship? The facts say otherwise. True, defendants were the ones to send out emails to breeders, including defendants, to set up a business relationship. However, plaintiffs did not respond to that email. It was only five months later, around the time a co-owner of Boo had dropped out of the picture, that involuntary plaintiff sought out defendants to make a deal. Moreover, defendants negotiated the terms of the contract almost exclusively with involuntary plaintiff, who was located in Missouri, not plaintiffs. Other than the email, defendants' contacts with plaintiff appear limited to communication between defendant's agent Betancourt and Molnar once during negotiations; a phone call made by plaintiff Patt Kolesar to defendant Molnar regarding the contract; and a ceremonial offering of one dollar by Molnar to defendant Patt Kolesar in New York. All other contacts

9

appear to have been between defendants and involuntary plaintiff, who was in charge of handling the dog and received the monthly salaries and expenses for showing it. The fact that Boo lived with his Wisconsin owners at times instead of with the handler whose salary defendants paid is irrelevant. (No one suggests that defendants had anything to do with Boo's occasional stays with plaintiffs or that those stays had anything to do with the parties' deal.) Although plaintiffs and defendants were in on the same deal, defendants' activities cannot be said to have created "substantial and not isolated" contacts with this state under § 801.05(1)(d).

Plaintiffs' next argument is that personal jurisdiction may be exercised pursuant to § 801.05(5)(d), which permits jurisdiction where the action "[r]elates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on the defendant's order or direction." Plaintiffs contend that they sent defendants the American Kennel Club registration form from this state, which they say is a "document of title" and a "thing of value." Although it is hard to say that membership in the club could be considered "title," perhaps it is a "thing of value." Even so, the facts establish that plaintiffs sent defendants *registration forms*, not documents granting them permission to join that club. If anything, their right to join the club derived from the co-ownership the parties had established earlier following their oral agreement. In short, plaintiffs' mailed registration forms do not establish a ground for exercising personal jurisdiction over defendants.

10

Plaintiffs do not identify any other statutory ground for exercising personal jurisdiction over defendants. (Plaintiffs have not responded to defendants' argument that § 801.05(6)(c) does not apply; their failure amounts to waiver of that issue.)

Because plaintiffs fail to show that statutory grounds exist for exercising personal jurisdiction over defendants, it is not necessary to consider whether due process requirements have been met. Nonetheless, I point out that, even had plaintiffs met the statutory requirements, they could not establish that due process requirements had been satisfied in light of defendants' sparse connections with Wisconsin. As the Supreme Court held in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), a contract alone does not automatically establish sufficient minimum contacts of an out-of-state party. Such contacts are established only when the parties' prior negotiations, contemplated future consequences, contractual terms and actual course of dealing demonstrate purposeful availment of the forum state. Id. at 478-79.

In Burger King the court found that the out-of-state defendant had established minimum contacts by negotiating a long term contract with the franchisor that envisioned continuing and wide-reaching contacts in the state. Id. at 479-80. This case is a far cry from Burger King. Defendants' contacts with Wisconsin involve (1) an isolated email to plaintiffs and (2) a co-ownership agreement with involuntary plaintiff in Missouri and plaintiffs in Wisconsin of a dog who resided in Missouri for show purposes. Such connections to

11

Wisconsin are simply too tenuous to satisfy the "minimum contacts" requirement for due process.

ORDER

IT IS ORDERED that:

1. The motion to dismiss for lack of personal jurisdiction filed by defendants Michele Molnar and Jamie Danburg, dkt. #2, is GRANTED. This case is DISMISSED without prejudice for lack of personal jurisdiction over defendants.

2. The motion to remand this action to state court filed by plaintiffs Patt Kolesar and Ray Kolesar, dkt. #9, is DENIED as moot.

3. The clerk is directed to close this case.

Entered this 5th day of August, 2009.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge